UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM PARRY,

                         Plaintiff,

        v.                                          **DECISION AND ORDER**

HON. DEBORAH A. HAENDIGES,                          06-CV-614S
NEW YORK STATE SUPREME COURT
JUSTICE, COUNTY OF ERIE

                         Defendant.


## I.  INTRODUCTION

On September 13, 2006, Plaintiff William Parry, a member of the Seneca Nation of Indians, commenced this action pursuant to 42 U.S.C. § 1983.  Parry seeks to enjoin Defendant Deborah A. Haendiges, a New York State Supreme Court Justice, from exercising jurisdiction over a divorce action brought in the state court by his wife, Sally Snow, on the ground that the Seneca Nation of Indians Peacemakers Court has exclusive jurisdiction over the dispute.

On September 14, 2006, Parry filed an *ex parte* motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 65(b) of the Local Rules of Civil Procedure for the Western District of New York.  That motion was denied without prejudice due to procedural defects.

On September 21, 2006, Parry renewed his preliminary injunction motion and also moved, pursuant to Local Rule 7.1(d), to shorten the notice requirements in connection therewith.  The motion to shorten time was granted on September 25, 2006, Parry was

1

directed to serve Haendiges with the preliminary injunction motion no later than 5:00 p.m. on September 26, 2006, Haendiges was given until noon on September 28, 2006 to submit a response, and oral argument on the preliminary injunction motion was heard at 3:00 p.m. on that same date.  A few hours prior to oral argument, Sally Snow moved to intervene in this action and her attorney appeared at oral argument.

On October 2, 2006, this Court issued a Text Order (Docket No. 20) denying the motion for preliminary injunction and advising that a written decision would follow setting forth factual findings and legal conclusions in accordance with Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure.  Thereafter, on October 4, 2006, Parry's counsel filed a Notice of Voluntary Dismissal without prejudice.  Irrespective of that Notice, this Court is obligated to set forth the grounds for its refusal to grant injunctive relief.  Having considered the positions of the parties and proposed intervenor Snow,[1] this Court finds as follows.

## II.  FACTUAL FINDINGS

William Parry and Sally Snow were married in 1994.  Both are members of the Seneca Nation of Indians.

In or about March 2004, Parry commenced an action for divorce in New York State Supreme Court, County of Erie.  <u>William F. Parry v. Sally J. Snow</u>, Index No. SF 2004-900977.  Parry stipulated to the appointment of a referee and the assigned justice in that

---

[1]  The motion for preliminary injunction includes the Affirmation of Brian M. Melber, Esq., the Affidavit of William Parry with exhibits A through F, a memorandum of law, a proposed order, the Supplemental Affirmation of Scott R. Hapeman, Esq. with exhibit A, and the Supplemental Affirmation of Brian M. Melber with exhibits A through C.  Defendant Haendiges filed the Declaration of Peter B. Sullivan, Esq. with exhibits Bates numbered 1-50 and a memorandum of law.  Proposed intervenor Snow filed the Declaration of Patrick J. Brown, Esq., who has submitted to this Court, with copies to Plaintiff, a state court order of protection in effect until February 21, 2007.  The parties have submitted as exhibits various pleadings, motions and orders filed in both the state and tribal courts.  Though not a complete record of all proceedings, the information is sufficient for this Court to make findings as to the sequence of events and the actions of the parties to the underlying dispute.

case, Hon. John F. O'Donnell, issued a temporary order relative to personal and business properties, a supplemental order relative to same, and an order for an accounting.  Parry's divorce action continued for approximately one year, but was discontinued sometime after February 15, 2005.[2]

Shortly after Parry discontinued his action, on or about April 28, 2005, Snow commenced an action for divorce against Parry in New York State Supreme Court, Erie County, Sally Snow v. William Parry, Index No. 2005-901066.  Parry filed and served a Notice of Appearance and Demand for Complaint on May 26, 2005.  On June 24, 2005, Justice O'Donnell, to whom the case was assigned, issued a temporary order awarding to Snow spousal maintenance and the exclusive use of a residence.

On July 5, 2005, Parry and other petitioners sought from the Peacemakers Court an order enjoining and restraining Snow and her children from access to certain residential and business property in which they claimed Snow has no interest.  The Peacemakers Court issued a temporary restraining order ("TRO") on July 12, 2005.  Snow moved to dismiss the TRO on July 19, 2005 on the ground that the parties had established the New York State Supreme Court as the forum for resolving their marital dispute and orders previously issued by the state court remained in effect; specifically an order of protection and a temporary maintenance order.  The Peacemakers Court dismissed the TRO on July 22, 2005 "for **lack of jurisdiction** as there is an Order of Protection filed with the State Court." (Docket No. 14 at 41 (emphasis supplied).)

On August 5, 2005, after dismissal of his Peacemakers Court action, Parry moved

---

[2]  The most recent order in SF 2004-900977 is dated February 15, 2005.

to dismiss the state court divorce action on the ground that the Peacemakers Court has exclusive jurisdiction over divorce actions between two members of the Seneca Nation. Justice O'Donnell denied the motion, finding that the state courts and the Peacemakers Court have concurrent jurisdiction, noting that the Peacemakers Court had dismissed Parry's petition, and concluding that because the state court was the first to obtain jurisdiction, the action should remain there.

Parry filed a notice of appeal of the Peacemakers Court's order of dismissal on August 22, 2005, but there is no indication that he ever pursued his appeal. Likewise, Parry filed a notice of appeal of Justice O'Donnell's October 31, 2005 decision and order, but there is no record of that appeal having been perfected.[3]

Snow's action for divorce subsequently was transferred to Justice Haendiges.

On July 10, 2006, Justice Haendiges ordered Parry to show cause, on August 22, 2006, why he should not be held in contempt for failure to pay spousal maintenance as ordered.[4] Prior to the scheduled contempt proceeding, on July 26, 2006, Parry sought from the Peacemakers Court a "Permanent Injunction with Temporary Restraining Order" enjoining New York State from exercising jurisdiction over Snow's divorce action. The Peacemakers Court granted an *ex parte* restraining order on August 2, 2006.

On August 29, 2006, Parry commenced an action for divorce in the Peacemakers Court and a Summons and Notice directing Snow to appear on October 4, 2006 at 6:30

---

[3]   Peter Sullivan, Esq., the Assistant Attorney General representing Haendiges, declares that he contacted the New York State Appellate Division, Fourth Department, and was informed that the appellate court has no record of this case.

[4]   Counsel for Parry and Snow in this federal court action stated at oral argument that Parry has made up his arrears and maintenance is no longer at issue.

p.m. was issued.

On September 21, 2006, Justice Haendiges issued an order to show cause relating to Parry's purported failure to comply with an Asset Purchase Agreement between Parry and Snow.  A return date of October 2, 2006 at 2:00 p.m. was set for that hearing.

### III.  THE FEDERAL COURT ACTION

Parry commenced this federal court action shortly after filing his action for divorce in the Peacemakers Court.  He alleges that jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 and seeks redress under 42 U.S.C. § 1983 for the deprivation, under color of state law, of the rights and privileges secured to him by the Constitution, laws and treaties of the United States.  Parry seeks declaratory and injunctive relief only.

### A.    The Parties' Positions Regarding Preliminary Injunctive Relief.

In his preliminary injunction motion, Parry seeks to enjoin Haendiges from continuing to assert or exercise jurisdiction over him in Snow's state court divorce action. Parry first contends that the Peacemakers Court has exclusive subject matter jurisdiction over the dissolution of a marriage between two duly enrolled members of the Seneca Nation.  Alternatively, he argues that even if the New York State Supreme Court has concurrent jurisdiction with the Peacemakers Court, the principles of comity require that this Court enjoin Haendiges from exercising jurisdiction.  Parry claims that he will suffer irreparable harm should he be required to submit to a court with no jurisdiction; and specifically, that further proceedings in the state court will place him at risk of the

immediate loss of his property and even incarceration.[5]

Haendiges' memorandum of law urges that, by operation of federal statute, New York's courts have concurrent jurisdiction over the underlying divorce action and that the principles of comity, under the circumstances presented here, weigh heavily in favor of the continued exercise of state court jurisdiction.  Haendiges argues that the state court's proper exercise of jurisdiction does not give rise to any irreparable harm.

**B.     The Preliminary Injunction Standard.**

The standard in this Circuit for the issuance of a preliminary injunction motion is well-settled.  "To obtain a preliminary injunction, the moving party must show, first, irreparable injury, and second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor."  Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004).  "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered."  Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citations and quotation marks omitted).  "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. And, irreparable harm must be shown to be actual and imminent,

---

[5] Counsel for Parry and Snow agreed at oral argument that the first order to show cause, relating to spousal maintenance, has been resolved.  That order contained a provision for arrest and imprisonment should Parry fail to appear.  There is no such language in the second order to show cause.  Accordingly, the purported irreparable harm involves loss of property only.

not remote or speculative." *Id.*

Here, Parry's claim of irreparable harm—his being wrongfully subjected to the jurisdiction of the state court—is inseparable from the second prong of the analysis, the merits of his jurisdiction arguments. Accordingly, this Court will consider the second prong first.

## IV.  CONCLUSIONS OF LAW

**A.     The State Courts Have Concurrent Jurisdiction over Private Civil Disputes Between Indians.**

Parry argues that because the parties to the underlying divorce action are both members of the Seneca Nation who resided on the Nation's Cattaraugus Reservation throughout their marriage, and because their divorce involves both the temporary use and final disposition of real property located within the sovereign territory of the Seneca Nation, exclusive subject matter must rest with the Seneca Nation's Peacemakers Court. His factual argument is preceded by citations to United States Supreme Court cases recognizing the rights of Indian tribes to self-government and exclusive jurisdiction over their internal affairs. *See, e.g.*, Fisher v. District County Court, 424 U.S. 382, 96 S. Ct. 943, 47 L. Ed. 2d 106 (1976). Parry does not reference or acknowledge the existence of any federal or state statutes governing this issue.

Haendiges contends that 25 U.S.C. § 233[6] expressly confers jurisdiction on the New

---

[6] Section 233, entitled "Jurisdiction of New York State courts in civil actions" provides, in its entirety, that:

**The courts of the State of New York under the laws of such State shall have jurisdiction in civil actions and proceedings between Indians or between one or more Indians and any other person or persons to the same extent as the courts of the State shall have jurisdiction in other civil actions and proceedings, as now or hereafter defined by the laws of the State**: *Provided*, That the governing body of any recognized tribe of Indians in the State of New York shall have the right to declare, by

York State courts and that it applies exactly to the present situation. Thus, according to Haendiges, concurrent jurisdiction exists. This Court agrees that the underlying state court divorce action is subject to the concurrent jurisdiction of the State and Peacemakers courts for the reasons stated below.

This District has had occasion to review the limitations on state court jurisdiction under § 233 in Bowen v. Doyle, 880 F. Supp. 99 (W.D.N.Y. 1995) (Arcara, R., Chief Judge), *aff'd*, 230 F.3d 525 (2d Cir. 2000). In Bowen, thirteen members of the Seneca Nation brought a state court action against the Nation's newly elected President alleging that he had engaged in numerous acts outside the scope of his authority including, among other things, the attempted removal of certain tribal Councillors and termination of various tribal government employees. *Id*. at 107. In a thorough and well-reasoned decision, Chief Judge Arcara reviewed the Seneca Nation's rights under the Treaty of 1794, the right to

---

appropriate enactment prior to September 13, 1952, those tribal laws and customs which they desire to preserve, which, on certification to the Secretary of the Interior by the governing body of such tribe shall be published in the Federal Register and thereafter shall govern in all civil cases involving reservation Indians when the subject matter of such tribal laws and customs is involved or at issue, but nothin herein contained shall be construed to prevent such courts from recognizing and giving effect to any tribal law or custom which may be proven to the satisfaction of such courts: **Provided further, That nothing herein contained shall be construed as subjecting the lands within any Indian reservation in the State of New York to taxation for State or local purposes, nor as subjecting any such lands, or any Federal or State annuity in favor of Indians or Indian tribes, to execution on any judgment rendered in the State courts, <u>except in the enforcement of a judgment in a suit by one tribal member against another in the matter of the use or possession of land</u>**: *And provided further*, That nothing herein contained shall be construed as authorizing the alienation from any Indian nation, tribe, or band of Indians of any lands within any Indian reservation in the State of New York: *Provided further*, That nothing herein contained shall be construed as conferring jurisdiction on the courts of the State of New York or making applicable the laws of the State of New York in civil actions involving Indian lands or claims with respect thereto which relate to transactions or events transpiring prior to September 13, 1952.

(emphasis added to the provisions on which Haendiges relies).

tribal self-government repeatedly affirmed by the United States Supreme Court for more than a century, and the parameters of § 233 as informed by <u>Bryan v. Itasca County</u>,[7] 426 U.S. 373, 96 S. Ct. 2102, 48 L. Ed. 2d 710 (1976).  *Id.* at 112-123.  Following his extensive analysis, Chief Judge Arcara held that "Congress only intended to grant State Courts jurisdiction over private civil litigation between Indians and between Indians and non-Indians" and "§ 233 does not authorize courts of the State of New York to become embroiled in internal political disputes amongst officials of the Nation's government."  *Id.* at 122 and 118.

Unlike the controversy in <u>Bowen</u>, which directly implicated the Nation's right to self-government and jurisdiction over its internal affairs, the divorce action at issue here is precisely the type of private civil litigation between Indians that Chief Judge Arcara indicated is authorized by § 233.  *Id.* at 122; *see also*, <u>Bryan</u>, 426 U.S. at 384 n.10 (a fair reading of  [the statute] suggests that civil actions are those which have to do with private rights and status such as "contract, tort, marriage, divorce, insanity, descent, etc., but would not include laws declaring or implementing the states' sovereign powers, such as the power to tax, grant franchises, etc.") (citation and quotation marks omitted); <u>People v. Anderson</u>, 137 A.D.2d 259, 270 (4th Dep't 1988) (private civil claims by Indians against Indians are within the contemplation of 25 U.S.C. § 233).

---

[7]  In <u>Bryan</u>, the Supreme Court held that 28 U.S.C. § 1360 (P.L. 280), entitled "State civil jurisdiction in actions to which Indians are parties," grants state courts jurisdiction over private civil litigation involving reservation Indians, but does not grant to the States the power to exert general regulatory authority, such as taxing authority, over Indian reservations.  *Id.* at 385.  The provisions of Public Law 280 (applicable to six Western states) and § 233 (applicable to New York State only) are similar, and courts in this Circuit have read § 233 in a manner consistent with P.L. 280, as informed by <u>Bryan</u>.  <u>Bowen</u>, 880 F. Supp. at 119 (citing <u>United States v. Burns</u>, 725 F. Supp. 116, 125 (N.D.N.Y. 1989)).

Indeed, this District noted very recently that the "critical issues of tribal governance at stake in <u>Bowen</u>" simply are not present in a state court divorce action against a Seneca Nation member.  <u>Van Aernam v. Nenno</u>, 06-CV-0053C(F), 2006 U.S. Dist. LEXIS 38402, at *16 (W.D.N.Y. June 9, 2006) (Curtin, J.).  In <u>Van Aernam</u>, Judge Curtin was not asked to expressly consider the applicability of § 233 to divorce actions because, in that case, the Indian plaintiff and the State defendant agreed that the State and Peacemakers Courts have concurrent jurisdiction over domestic relations issues.[8]  This Court now expressly finds that the plain language of § 233 and this District's prior analysis in <u>Bowen</u> compel the conclusion that a divorce action falls within the statute's grant of civil jurisdiction to the New York State courts.

This Court also rejects Parry's contention that the Nation's sovereignty is somehow implicated in this private dispute because the divorce action will result in the distribution of real property within the boundaries of the Cattaraugus reservation.  The title to or use of real property will rest with a Seneca Nation member regardless of how the dispute between these two Nation members is resolved, and Parry has not identified any possible outcome that would circumscribe the Nation's sovereign functions.  Moreover, the State's jurisdiction over such a property distribution is implicit in § 233, where the statute expressly grants the state courts jurisdiction to enforce judgments relating to the possession or use of land in

---

[8] Parry seeks to distinguish his case from <u>Van Aernam</u> on the ground that his divorce action involves two Seneca Nation members, whereas <u>Van Aernam</u> involved a marriage between an Indian and a non-Indian.  According to Parry, concurrent jurisdiction may exist in the latter case, but the Peacemakers Court has exclusive jurisdiction over disputes between two of its members, both residing on reservation land.  Parry provides no support for this proposition, which is contrary to the plain language of both 25 U.S.C. § 233 and N.Y. Indian Law § 5, which provides that: "Any action or special proceeding between Indians or between one or more Indians and any other person or persons may be prosecuted and enforced in any court of the state to the same extent as provided by law for other actions and special proceedings."

suits by one tribal member against another.

The fact that the State's jurisdiction over the underlying dispute is concurrent, rather than exclusive, is evident from a reading of N.Y. INDIAN LAW § 46, which provides that the Peacemakers Court of the Cattaraugus reservation has jurisdiction to grant divorces between individual Indians residing on the reservation.  Moreover, N.Y. INDIAN LAW § 5 employs the permissive "*may* be prosecuted and enforced in any court of the state," not the mandatory *shall*.  As New York's appellate courts have noted, this permissive language suggests that Indians have access to either State or tribal forums for resolution of their disputes.  In other words, the doors of the state courts are open to Indians, should they choose to use them.  Seneca v. Seneca, 293 A.D.2d 56, 59 (4th Dep't 2002) (citing Matter of Jimerson v. Halftown Estate, 22 A.D.2d 417, 419 (3d Dep't 1965)).

Having concluded that the state court has concurrent jurisdiction over the underlying divorce action, this Court finds that Parry is unlikely to succeed on the merits to the extent that his request for injunctive relief rests on the proposition that the Peacemakers Court has exclusive jurisdiction.  This does not end the Court's inquiry, however, as Parry alternatively argues that he is likely to succeed on the merits under the principles of comity.

**B.    The Balance of Equities Weighs in Favor of the State Court Retaining Jurisdiction.**

Parry contends that if concurrent jurisdiction exists, principles of comity require a finding that jurisdiction properly lies with the Peacemakers Court.  Parry urges this Court to apply the factors set forth in Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians, 265 Wis.2d 64 (2003), the same analysis Judge Curtin applied in Van Aernam.  Applying those factors, this Court finds that the equities in this case weigh in

favor of the state court's continued exercise of jurisdiction.

The <u>Teague</u> court listed thirteen factors to be applied, according to appropriate weight on a case-by-case basis, to help determine, "in the spirit of cooperation, not competition," whether the state or the tribal court should exercise jurisdiction over the dispute. <u>Van Aernam</u>, 2006 U.S. Dist. LEXIS 38402 at *24-25.  Each is discussed below.

### 1.   Where the Action was First Filed

Not only was the Parry/Snow divorce action first filed in state court, it was Parry, who now wishes to divest the state court of jurisdiction, who commenced the first state court action in March 2004.  Parry actively litigated his action for approximately one year before discontinuing it.  Thereafter, in April 2005, Snow commenced her state court divorce action against Parry and this is the action that remains pending.  Parry entered an appearance and made a demand for a complaint in that action.  It was only after the state court issued a temporary order for spousal maintenance that Parry sought to invoke the jurisdiction of the Peacemakers Court by petitioning for a restraining order.  The Peacemakers Court ultimately declined to exercise jurisdiction based on the pendency of the state court action and dismissed Parry's petition.  Parry could have appealed that dismissal, but apparently did not.  After his unsuccessful attempt to establish jurisdiction in the Peacemakers Court, Parry moved to dismiss Snow's state court action for lack of jurisdiction, which motion was denied.  Parry could have appealed that decision, but apparently did not.  Snow's action continued in state court for another ten months before Parry filed an action for divorce in the Peacemakers Court.   An initial appearance before the Peacemakers Court was scheduled for October 4, 2006.

At the outset, Parry selected the state court as his preferred forum.  The state court

has exercised sole jurisdiction over the Parry/Snow divorce proceedings for more than two and one-half years, during the course of which the Peacemakers Court expressly held that it lacked jurisdiction.   These circumstances weigh heavily in favor of the state court's retaining jurisdiction over Snow's divorce action.

### 2. The Parties' and Courts' Expenditures of Time and Resources in Each Court

Through the course of Parry's and Snow's respective state court actions, the state court has issued temporary orders relative to personal and business properties, a temporary award of support, orders of protection, and a decision on jurisdiction.   In addition, almost two years ago, the state court appointed an independent referee and then subsequently authorized retention of an accountant to evaluate the marital  assets.  It is evident that both Parry and Snow have expended considerable time and resources in state court.   In contrast, both parties spent minimal time in the Peacemakers Court prior to its determination that it lacked jurisdiction.  Parry's recent overtures to the Peacemakers Court also appear to have involved minimal time and resources to date.   Thus, this factor also weighs in favor of the state court retaining jurisdiction.

### 3. The Relative Burden on the Parties'

No court has entered a final judgment here and this matter will require further litigation in either forum.   The record contains no information from which this Court can assess the relative costs and procedural burdens of litigation in the respective courts. Nevertheless, the fact that the state court has appointed and received recommendations from a referee, directed the production of discovery relative to an evaluation of assets and issued several temporary orders clearly suggests that the state court is in a position to

decide the matter more expeditiously than the Peacemakers Court, even assuming that court is inclined to reverse its previous determination on jurisdiction.  Accordingly, this factor weighs in favor of the state court.

### 4.    Implication of Tribal Sovereignty

The underlying divorce action affects the interests of the private parties, but does not implicate the sovereignty of the Seneca Nation.  This conclusion is consistent with the analysis of 25 U.S.C. § 233 above, and is further buttressed by the Peacemakers Court's determination that it lacks jurisdiction here.  This Court finds it inconceivable that the tribal court would reach such a conclusion if there were the slightest indication that a state court adjudication would diminish the Nation's right to self-government and control over its internal affairs.

The circumstances of this case are readily distinguished from Van Aernam.  There, the case was first brought in the Peacemaker's Court, the tribal court already had brought the matter to final judgment, and the Seneca Nation intervened in the federal court action and articulated a strong interest in preserving its tribal authority over matters involving the activities of non-Indians (the wife) on reservation land.  2006 U.S. Dist. LEXIS 38402 at *27-30.

Absent any apparent considerations of tribal sovereignty here, this factor weighs in favor of the state court retaining jurisdiction.

### 5.    Application/Interpretation of Tribal Law or State Law

Pursuant to N.Y. INDIAN LAW § 3, "[t]he laws of the state relating to . . . divorce, are applicable to Indians . . . ."  Because this divorce action requires the application and

14

interpretation of state law, this factor weighs in favor of the state court retaining jurisdiction.

**6.      Whether the Case Involves Traditional or Cultural Matters of the Tribe**

While the underlying case involves two members of the Seneca Nation, Parry has not identified any tribal traditional or cultural matters that are implicated by a divorce action. On balance, this Court finds that this factor is neutral.

**7.      Location of the Material Events**

There is no dispute that the parties resided throughout their marriage on the Cattaraugus reservation and that some or all of the marital property at issue is located on tribal land.  Therefore, this factor favors the jurisdiction of a tribal court.

**8.      Relative Institutional or Administrative Interests of Each Court**

As already discussed above, conservation of judicial, institutional and administrative resources would best be served by allowing the state court, which has exercised sole jurisdiction over this matter for two and one-half years, to retain jurisdiction.

**9.      Tribal Membership Status of the Parties**

Both Parry and Snow are Seneca Nation members and this factor weighs in favor of the tribal court.

**10.      Contractual Choice of Forum**

This factor does not appear to be relevant here.

**11.      Contractual Choice of Law**

This factor does not appear to be relevant here.

**12.      Determination of Jurisdiction**

As discussed above, the State and Peacemakers' Courts have concurrent

jurisdiction to hear divorce actions between tribe members.  However, the state court has exercised sole jurisdiction for two and one-half years, while the Peacemakers' Court, when presented with a challenge to its jurisdiction, decided that under the circumstances presented, jurisdiction was lacking.  This factor weighs in favor of the state court retaining jurisdiction.

### 13.    Conflicting Judgments

No court has issued a final judgment of divorce and this factor is, therefore, neutral.

This Court finds that the balance of equities and considerations of comity in the unique circumstances presented here favor a conclusion that the state court is the appropriate forum for adjudication of the Parry/Snow divorce action.  While this Court is not unmindful of the deference and support for tribal courts generally expressed in federal caselaw, the circumstances here are anything but ordinary.  Here, Plaintiff Parry was free to select his forum and freely chose the state courts in the first instance.  Principles of comity must be balanced with the judiciary's long-standing disapproval of forum shopping. This is particularly so where this private dispute between Indians does not implicate the Seneca Nation's sovereignty.

At this juncture, this Court concludes that Parry is not likely to succeed on the merits to the extent his claim for injunctive relief rests on a balancing of equities.

### C.    Parry has not Identified any Irreparable Harm.

Parry claims that he is at risk of the immediate loss of his property in the State court action.  This concern is insufficient to show irreparable harm where it is simply one possible outcome of an adjudication by a court that is properly exercising its jurisdiction.  An

16

unwelcome outcome is among the everyday risks of litigation; it does not constitute irreparable harm for purposes of a preliminary injunction motion.

## V.  CONCLUSION

For all of the reasons stated, Plaintiff William Parry's Motion for a Preliminary Injunction is DENIED.


SO ORDERED.

Dated:        October 6, 2006
              Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge